This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Teresa S. ("Teresa"), appeals from judgments of the Summit County Court of Common Pleas, Juvenile Division, that adjudicated her four children dependent and placed them in the "temporary" custody of Summit County Children Services Board ("CSB"). The temporary custody order resulted from the children's removal from their home on August 10, 2001. This Court reverses.
 {¶ 2} Teresa is the mother of four children, A.P., born January 9, 1988; R.S., born December 31, 1990; R.S., born December 27, 1991; and A.G., born August 9, 1994. Prior to the commencement of this case, all four children resided with their mother, a single parent. CSB became involved in this case following an incident on August 8, 2001 that occurred while A.G. was visiting his father's home. A.G.'s adult half-sister was babysitting him and, in an apparent attempt to discipline him for using inappropriate language, repeatedly struck him with a belt buckle, leaving marks on his leg. A.G. told his mother about the incident and she took him to the hospital. The hospital social worker notified CSB and the police.
 {¶ 3} In response to that notification, a CSB caseworker went to Teresa's home and interviewed her and A.G. about the incident. Apparently satisfied that Teresa was not responsible for the incident, the caseworker left the home. Teresa had known the half-sister for ten years and had no reason not to trust her. The half-sister had watched Teresa's children in the past and there had never been any problems. The CSB caseworker also spoke to the half-sister, who admitted beating A.G. The record suggests that the half-sister was prosecuted for the offense.
 {¶ 4} Later that day and the following day, CSB received additional referrals about this family. Allegations were made that Teresa used drugs and that she did not adequately supervise her children. Consequently, the caseworker returned to Teresa's home the following day.
 {¶ 5} During the second interview, on August 9, Teresa admitted that she used marijuana but indicated that she did not use it in front of the children. The caseworker asked Teresa to agree to a safety plan that would require her to keep A.G. away from his father's neighborhood where the beating had occurred, to adequately supervise the children, and to submit to a drug screen at the Akron Drug Board that same day. Teresa verbally agreed to the terms of the safety plan but did not sign it. Because it was already 1:00 in the afternoon when the caseworker visited Teresa's home and because Teresa had a job interview that afternoon, she did not get to the Akron Drug Board until 4:15, fifteen minutes after it stopped taking urine samples. Teresa went to the Akron Drug Board the following day, August 10.
 {¶ 6} Because Teresa did not "drop urine" on August 9, CSB removed the children from the home the following day while Teresa was at work at her new job. CSB alleged abuse as to A.G. only, based on the incident in which his half-sister struck him with the belt, and dependency and neglect as to all four children, based on Teresa's alleged drug use and failure to supervise her children. Following an adjudicatory hearing before a magistrate, the magistrate found that the children were dependent because they lacked adequate parental care due to the mental condition of Teresa. The magistrate based that conclusion on Teresa's admitted daily use of marijuana, inferring that the drug use must impair her ability to parent the children. The magistrate further found that CSB had failed to prove that A.G. was an abused child or that any of the children were neglected children.
 {¶ 7} Teresa filed objections to the magistrate's decision. Although the trial court agreed that there was insufficient evidence that the children lacked adequate parental care, it found that the children were dependent due to Teresa's chronic, long-term drug use because it necessarily impacts the children's environment. See R.C. 2151.04(B) and R.C. 2151.04(C). The trial court dismissed the allegations of neglect and that A.G. was an abused child. The children were later placed in the temporary custody of CSB.
 {¶ 8} Teresa appeals and raises two assignments of error, both of which challenge the evidence supporting the trial court's adjudication of the children as dependent.
 {¶ 9} Teresa contends that the trial court's finding of dependency was not supported by ample evidence. She asserts that the trial court based its finding of dependency on the mere fact that she admittedly smokes marijuana and that her marijuana use, in and of itself, cannot support an adjudication of dependency.
 {¶ 10} When evaluating whether a judgment is against the manifest weight of the evidence in a juvenile court, the standard of review is the same as that in the criminal context. In re Ozmun (Apr. 14, 1999), 9th Dist. No. 18983. In determining whether a criminal conviction is against the manifest weight of the evidence:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 11} R.C. 2151.04 defines "dependent child" to include "any child:"
 "(B) Who lacks adequate parental care by reason of the mental or physical condition of the child's parents, guardian, or custodian; [or]
 "(C) Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]"
 {¶ 12} An adjudication of dependency requires clear and convincing evidence. Juv.R. 29(E)(4). Clear and convincing evidence is that which will produce in the trier of fact "`a firm belief or conviction as to the facts sought to be established.'" In re Adoption of Holcomb (1985),18 Ohio St.3d 361, 368, quoting Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 13} Although Teresa's use of marijuana was relevant evidence that the trial court should consider, "[t]he conduct of a parent is relevant *** solely insofar as that parent's conduct forms a part of the environment of [these] child[ren]." In re Burrell (1979), 58 Ohio St.2d 37,39. "In the absence of evidence showing a detrimental impact upon the child[ren]", Teresa's marijuana use does not warrant the state in removing these children from their mother's custody. Id. There was no such evidence presented in this case.
 {¶ 14} At the adjudicatory hearing, the CSB caseworker admitted that the agency had no evidence that Teresa's use of marijuana affected her parenting of any of the four children. The caseworker had never seen Teresa exhibiting symptoms of drug use and no marijuana or drug paraphernalia was seen in the house. There was no evidence submitted that Teresa ever had more than minimal quantity of the drug in her house. There was also no evidence presented as to the amount of marijuana consumed by Teresa each day, nor was there any evidence as to how that drug use might impair her parenting ability.
 {¶ 15} On appeal, CSB points to two prior incidents that occurred in this family, suggesting that Teresa's use of marijuana may have been a contributing factor. This Court's review of the record reveals no evidence that Teresa was under the influence of marijuana at the time of these incidents. In fact, there is no evidence that either incident occurred due to inadequate supervision by Teresa.
 {¶ 16} The first incident involved one of the older children starting a fire. In addition to the fact that this incident occurred more than seven years prior to the adjudicatory hearing, there was no evidence as to any of the surrounding circumstances such as exactly how the fire was started and whether anyone was harmed. CSB apparently did not feel the need to remove the children from the home following that incident. In fact, several years later, according to undisputed evidence presented at the hearing, CSB had enough confidence in Teresa's parenting ability that it temporarily placed an infant in her home and the child resided with her for six months.
 {¶ 17} It is unclear exactly when the second incident occurred, but it was apparently during the same year that the children were removed from the home. A.G. was playing at a neighbor's house when some other children began playing with a lighter and gasoline, apparently attempting to start some sticks on fire. A.G. sustained serious burns as a result. Again, the evidence presented at the hearing about this incident was very sketchy. The CSB caseworker said almost nothing about the incident and indicated only that she thought A.G. was at a neighbor's house at the time. Teresa testified that A.G. was playing with children who lived across the street from her and that he had played at their house and with these children many times before. She further indicated that the mother of these children was home at the time and she was confident that A.G. was safe playing there. There was no evidence that Teresa had used poor judgment by allowing A.G. to play at the neighbor's house or that she had any reason to be watching what he was doing while he was there. When Teresa discovered what had happened, she immediately took A.G. to the hospital for treatment of his burns. As with the prior incident, the children were not removed from the home following this incident and there was no evidence that CSB had concerns about Teresa's parenting ability at that time.
 {¶ 18} The only relevant evidence that was introduced at the hearing about how Teresa's drug use impacted the environment of her children was the testimony of the CSB caseworker that CSB had no evidence that Teresa's marijuana use had been affecting her parenting of any of her four children. That testimony essentially summed up CSB's case against Teresa. Teresa admits that she regularly uses marijuana outside the presence of the children but CSB has no evidence that it impacts her children in any way.
 {¶ 19} The evidence that was presented about the children's home environment suggested that there were no basic problems with Teresa's parenting. Teresa apparently worked to support her children, her rent was paid up to date, and the home was furnished and had working appliances and utilities. There was nothing to suggest that Teresa was failing to meet any of her children's needs. The caseworker noted that the children had adequate housing and that they appeared happy and well cared for. The children were clean, healthy, attended school, and were apparently good students.
 {¶ 20} While this Court certainly does not condone a parent's use of an illegal substance or abuse of a legal substance, parents have a fundamental right to raise their children. See Stanley v. Illinois
(1972), 405 U.S. 645, 657-658, 31 L.Ed.2d 551; In re Murray (1990),52 Ohio St.3d 155, 157. Without some evidence that Teresa's supervision of her children or the environment of her children has been affected in some negative way by her use of marijuana, there is not clear and convincing evidence of dependency.
 {¶ 21} Despite the lack of evidence of a negative impact on the children's environment, the trial court found that Teresa's marijuana use had an adverse impact on the children. In reaching this conclusion, the trial court made some unsupported inferences from the evidence including that "Mother's continued involvement in criminal conduct surely creates a real possibility, if not a probability, that she will be arrested and possibly incarcerated, thus rendering her, at some point, unable to care for her children." Because there was no evidence that Teresa ever possessed more than a minimal quantity of marijuana, it was unreasonable to infer that her marijuana use would lead to incarceration. The Ohio General Assembly has treated marijuana use in a very unique manner and courts are not in a position to treat it differently. As Teresa aptly points out on appeal, possession of less than 100 grams of marijuana is a minor misdemeanor, the maximum penalty for which is a fine, not incarceration. See 2925.11 and 2929.21.
 {¶ 22} This Court finds that, while this mother's actions in this regard are neither appropriate nor salutary, given the statutory scheme governing the adjudication of dependency and neglect and the constitutional right to raise one's children, CSB failed to meet its burden to establish dependency by clear and convincing evidence. Consequently, the trial court erred in adjudicating these children dependent. The assignments of error are sustained and the trial court's judgment is reversed.
BATCHELDER, J. CONCURS.